Good morning, may it please the Court, my name is Joel Bertocchi with Akerman LLP in Chicago. I represent the appellants in this case and defendants with me at council table is my partner from Dallas, Mike Napoli. The fundamental error that took place below is the district court's failure to recognize the difference between a receiver and a bankruptcy trustee, particularly with respect to bringing fraudulent transfer claims. A bankruptcy trustee has a statute, Section 541B of the Bankruptcy Code, that specifically empowers him to bring claims on behalf of creditors, including fraudulent transfer claims. That statute assigns him that authority or her as a part of a comprehensive system that is the Bankruptcy Code that is designed to allow the resolution of bankruptcies by liquidation or reorganization. A receiver does not have a 541B. No statute allows, there is no statute that allows him to act for creditors. And in fact, there are a number of cases, including one from this Court, Donnell, that says he cannot. It is thus not, the receiver thus cannot step out of the shoes of the receivership entity. And I apologize for using that metaphor, but if you work on these cases, you're talking about shoes all the time. I wish somebody would come up with something else. But he stands in the shoes of the receivership entity. And he is limited by the receivership entity's limitations. One of which, the one that's critical in this case, is that the receivership entity agreed with our clients to arbitrate, to arbitrate every dispute between them, including, because they incorporated the AAA rules, whether issues are arbitrable or not. Counsel, this is the rub, and this is the wrinkle in this case to me. I understand that that's the typical rule, that receivers stand in the shoes of the receivership entity. But what's unique about this context is that the law allows the receiver to do something that the receivership entity cannot do. So it's not exactly standing in the shoes of the receivership entity, it's sort of standing next to them. Your Honor, I don't think that he does, because the whole, are you talking about the holding in Scholes and Donnell? No, I'm talking about, a receivership entity cannot bring the Fraudulent Transfer Act claim. It can't. That's what Donnell holds. No, the receiver can bring it. The receivership entity cannot. Oh, the receiver, well, okay, but the receiver, the receiver stands in his shoes and brings it on behalf of the entity. This is my point. Right. How is the receiver standing in the entity's shoes if the receiver is doing something the entity cannot do? Well, I think that, Your Honor, requires a little bit, my partner and I were talking about this yesterday. You have to sort of think about what it is that Judge Posner did in Scholes that was later adopted by a number of circuits, including this one and Donnell, because it does seem a little bit odd to say that the receivership entity, which in a Ponzi scheme case is almost always going to be the instrumentality of fraud, somehow or other can then, because the bad guys are gone, all of a sudden say, I, the receivership entity, was injured and can sue because money went to the wrong place. But that's what those cases hold. It's a big... Including our... I mean, we have adopted... Right. ...a reasoning from a certain circuit. Donnell adopts that. And Judge Posner's famous colorful language, I've argued in front of him many times, I've been the beneficiary of a lot of his colorful language, but it is a bit of a fiction, but it was adopted to say that, and what they said there is that when a receivership entity is used in a Ponzi scheme, it is injured by the bad guys who are running it in a way that allows it to bring these claims. And so the receivership entity won't bring the claims while the Ponzi scheme is going on, while it's a mindless zombie of the evil guys or whatever Judge Posner said. But it can — it's being injured. And so when the receiver arrives and he now controls the entity, he can bring claims and say they're injured. It's a little bit hard to adapt, but I think — but that is what Scholes held. That is what this Court agreed with in Donnell. And so we — to make it clear, we don't disagree that the receiver, Mr. Winkler, can bring fraudulent transfer claims against my clients. We don't think they have any merit. We think he's going to lose, but we don't disagree that he can bring them to the extent he can prove that my client — that the transfers to my clients injured Essex in some way. The question about — that this case is about is not whether, but how. And the answer is, excuse me, because Essex agreed to arbitration, because Essex agreed to arbitrate everything, including arbitrability, it has to be done through arbitration. And there's nothing remarkable about that. We cited some cases in our — I think it may be in the reply brief, where arbitration awards and fraudulent transfer claims were considered by courts of appeals. And I missed it, unfortunately. I'm sorry I didn't cite it. But in the Weand case from the Eleventh Circuit, that was a case in which a motion to compel arbitration was granted. A receiver then arbitrated his fraudulent transfer claim in a Ponzi scheme case. And then that — the Eleventh Circuit in the appeal, he argued, I shouldn't have had to arbitrate. They said, yes, you did. And then they confirmed the arbitration award, which I think the receiver lost. So there's nothing remarkable about arbitrating fraudulent transfer claims or having receivers arbitrate fraudulent transfer claims. This case is about not whether, but how. And that's all we're arguing. Now, the receiver knows that he doesn't have a statute. He knows he doesn't have a 541B that allows him to step into the creditor's shoes. Only — the only way he can avoid the fact that his receivership entity committed to arbitrate is to make the argument, and I think it's the most telling point in his argument, that Skolls and Skolls are a judicial form of 541B. And there's a lot wrong with that argument. One, you can't legislate. You can't put in for receivers — you can't graft a piece of the bankruptcy code in a place that it doesn't belong. But the bigger problem — well, I don't know if it's the bigger problem, but as big a problem is, that he cannot — that you cannot — you would be going against this Court's decision in Donnell and the decisions of a number of other circuits, including Skolls, Weand, Javich, Janvee — it's a little hard to keep those straight — in doing so. Those cases make it clear, yes, he can bring fraudulent transfer claims to the extent he can show that the entity was injured in that kind of odd and semi-fictional way. If he can show that, he can bring the claim. He has standing. But no, he does not do it as a creditor. And those cases say that in black and white. We've quoted the passages in our brief. And because he cannot do it as creditor, he can only do it as the entity. He is bound by the entity's commitments, including the commitment to arbitrate. Your Honor, I don't have anything additional unless the Court has questions. I'll let you take them. I have a couple of, like, maybe side questions. Because of the district court's decision, it didn't reach some of the — maybe a question or two about, you know, about the application of the arbitration agreement to the receiver. One is, you know, whether or not — it didn't make a finding on whether or not all of the, I'll say, people represented by the receiver are parties to the agreement. It didn't make a finding on it, did it? They didn't raise that, Your Honor. They didn't raise it below, and they didn't raise it — Well, they didn't have to raise it, because the district court said, you know, it was covered by the agreement. Your Honor, that's not an issue that — it's not the district court's fault that that wasn't raised. It wasn't raised — I'm not talking about the following question. Okay. The question is, what should we do about it? Should we assume that all the parties are parties to the agreement, or should we send it back to the district court to have the district court determine these questions of fact that it didn't address earlier? Your Honor, you should leave it for the arbitrator. Arbitrability is — is left for the arbitrator in this case. When we get to arbitration — Well, I — no, but I don't know if — I don't know if that — that question includes whether or not a person is a party to the agreement. Sure. You can — you can — it's arbitrability. If you're not a party to the agreement, you're not bound by the agreement, so you don't have to submit the question of arbitrability to the arbitrator. I mean, that's the common-sense argument. I don't know what the answer is, but — Well, I mean, Your Honor — But the question is, I mean, should the question be sent back to the district court? I don't think so, Your Honor. I think it can be left for the arbitrator. I think he could hear an argument that says, this person is not a party to this arbitration agreement. They shouldn't be here. And he could say yes or no, and then that award could be reviewed later. But that's the whole point of Brennan, this Court's decision in Brennan, is if there's an arbitration agreement, you tell it all to the arbitrator. Unconscionable — You know, who's a party to the agreement? Your Honor, validity of the arbitration agreement is left to the arbitrator. Unconscionability — if you claim, hey, this whole thing was unconscionable in the first place, which they've never argued, then you say the arbitrator can determine that. That's the point of this. It's supposed to be efficient and — Well, your position is, if one of the, you know, parties that you claim is subject to the arbitration agreement takes the position, well, I'm not bound because I never signed the agreement. That's the question that should be determined by the arbitrator? Yes. But bear in mind, again, your Honor, no one's raised this issue below — But it maybe was premature at that time. Well, it — maybe it can be raised — it can certainly be raised in front of the arbitrator, and if there's a problem, it can be dealt with in an appeal from the arbitrator. Well, my question is, can it be raised before the Court? Not — I don't think it can now, your Honor. I think it has to go to the arbitrator. Maybe it can be looked at later. Does that — the question of whether or not a person signed an arbitration agreement is a party to the agreement is — in these types of agreements, the province or the arbitrator? I don't, your Honor, because no one raised it. I've never looked at it. Well, I've never — no one raised it — Well, that's the problem. No one's looked at it, but, you know, it doesn't mean, you know, the question is predetermined. Your Honor, our position is that we are covered, and they've never taken the position is that we're not. That's why I don't have a case. Well, they took the position it's not subject to, you know, arbitration. Yeah, but not for that reason. The only — the only thing they — A hundred percent in the district court. The only thing they argued below was we can bring creditors' claims, and the creditors are strangers to the arbitration. But that's all they had to argue, right? I don't know. So, you know, the other substantive questions that never came — all right. I understand your position. All right. Well, thank you, your Honor. I'm glad you do. I'll reserve the rest of my time. Thank you. Good morning, your Honors, and may it please the Court, my name is Matthew Pham, and I represent the appellee, Jeff Winkler, as receiver. Today, I'd like to highlight three points for why this court should affirm the district court's ruling. Actually, two points. First, appellants misunderstand the guiding principles of Dinell, and those principles establish that Essex is the creditor, and its principal, Ralph Ionelli, is the debtor-slash-transferor, and the appellants are the transferee. Given that three-party setup, with respect to the fraudulent transfer claims, these claims can't be subject to arbitration. And second, I'd also like to point out that compelling a Ponzi scheme receiver to arbitrate his fraudulent transfer claims means giving effect to the instrument that perpetuated the fraud, which is tantamount to advancing the fraud after the fact, and also antithetical to the orderly administration of a receivership. Turning to my first- Can I, on the first point that you just made, does it really matter whether the entity is the creditor or not the creditor? I mean, we have case law that says the entity can bring these claims, whether the creditor or not, like traditionally thought of as the creditor or not. So in my mind, I'm not sure that whether the entity is a creditor or not matters at all. It's whether the entity signed the agreement. Well, Your Honor, I think it does matter, because with the setup of a fraudulent transfer claim, with the three parties, there's really no direct connection or relationship between the receiver or the receivership entity and the appellants. In that situation, it's in contrast to what I would call a direct claim. You know, garden variety, contract, or tort claims where party A sues party B because party B breached some sort of duty to party A. Given that three-party setup, then we look at how the FAA Section 2 construes or considers arbitration agreements. Specifically, it states that the provision to arbitrate has to involve a controversy arising out of that contract. And here, given the three-party relationship, this isn't a controversy arising out of that contract. Instead, the reason why the receiver has a fraudulent transfer claim against the appellants is because the receiver or the receivership entity is owed a debt by Mr. Ionale, and then Mr. Ionale was the one who transferred money to the appellants. I'm not sure. I don't know. I'm thinking still. I may ask you more questions, but go ahead. So briefly, I'd like to return to the issue of the receiver stepping into the shoes of the receivership entity. The court is correct that typically the receiver only has no greater rights than the receivership entity, but with respect to standing in these fraudulent transfer claims, that's clearly an exception to the rule. And this is because there basically has to be some sort of mechanism to provide for the receiver to pursue fraudulent transfer claims in order to augment the And then that takes us to Dinell. From there, I'd like to point out that on the surface, it looks as though that Essex is the transferor, but ultimately the legal fiction established by Dinell and Scholz established that instead it's the creditor of Mr. Ionale. So do you agree that if Essex was bringing these claims directly, which I It would be subject, I mean, we'd have to argue about whether the arbitration agreement covered these claims, but we would not be arguing that Essex is subject to the arbitration agreement. Am I correct? Well, if Essex were able to bring the claims, they wouldn't be fraudulent transfer claims. I believe that they'd be. I'm asking you to just assume facts that I understand are not actually true. But if Essex acting directly could bring this kind of a claim, then it would be subject to the arbitration agreement. And the only argument on the table would be whether these claims fall within the scope of that agreement. Is that fair? I believe that's fair, Your Honor, but going back to what I mentioned regarding the FAA's Section 2, I guess in the context of a fraudulent transfer claim, it would be outside the scope of the statute's language. That's what, I mean, I totally, I understand that line of argument and those may be good arguments, but that's not what we're here talking about today. So if that's true, if Essex bringing this directly would be subject to the arbitration agreement, I would argue whether it applies to this kind of a claim. So now we add the wrinkle of now we have a receiver. And typically the receiver is thought to act in the shoes of the entity and be subject to all the things that the entity is subject to. So why doesn't that defeat your argument here? What's the thing that makes this change enough that the receiver doesn't have to pay attention to the arbitration agreement? It's because of the three-party setup. So here, the transfers are occurring because Mr. Ionelli is considered to be the one transferring the money to the appellants. I mean, I guess I would understand that argument if the law didn't say, as sort of a bedrock principle, that a receiver, despite being a third party, stands in the shoes of this direct party. Then I would say, as an extension of the principles of Dinell and if we're looking at Mr. Ionelli as a transferor and not Essex, then effectively Mr. Ionelli also caused Essex to sign this agreement. And as a result, we'd also similarly conclude that Essex is not a party to the agreement, similarly as like Essex not being the transferor of the transfers. I don't know that I understand that. I guess I can clarify. On paper, Essex made these transfers to the appellants. But through the legal fiction established by Dinell, its role now shifts from the transferor to the creditor. And in that setup, Mr. Ionelli is now the transferor of those transfers. An extension of that principle would be Mr. Ionelli similarly caused Essex to sign this agreement essentially under duress. And because of that, then Essex should not be considered to be a party to this agreement because it was under the control of Mr. Ionelli in order to perpetrate fraud. I see what you're saying. Let me ask a follow-up question along the same lines as Judge Forrest. If we were to determine, I think on the principle question raised on this appeal, if we were to determine that the district court erred in treating a receiver as having equivalent powers as a bankruptcy trustee, right? And that this receiver, at least, doesn't enjoy those powers. That's the end of the story, is that right? In other words, we reverse and order the district court to send the case to arbitration? No, Your Honor. I believe that, alluding to your questions to appellant counsel, there's still the issue of who is a party to this arbitration agreement. I believe that issue hadn't been decided below. And that is- Well, he says, your opponent says you didn't raise it in the district court. It's because our focus on that issue before the court was the issue of arbitrability, essentially as a matter of law, respect to a receiver's fraudulent transfer claims in the policy scheme context. So I'm tracking your argument better now as I think about it a little bit more, and you helpfully explained it. Based on my reading of the briefing, you don't have a case that actually does what you're saying, right? And if I'm wrong, then, I mean, I understand the Scholl's case and the Donnell case in this court recognize sort of these shifting roles when we've got a bad actor. But I'm not aware of a case that basically recognizes that because of those shifting roles and this legal fiction that we've created, that the bad actor then sort of gets replaced as a signatory for contracts that the entity actually originally signed. I'm missing a case. Correct. There's no holding by any court that provides for that. But I believe in the Fifth Circuit's Aguirre 3 case, they addressed that as indicta, essentially acknowledging the receiver's argument that basically this contract is a contract to perpetrate the fraud, and that might effectively render the receivership entity not a party to it. And also, it was discussed in Judge Higginbottom's concurrence in that decision. It seems to run counter a bit to the basic concept that receivers are subject to all the defenses and arguments against the receivership entity. It sort of like wipes away all of those weaknesses that an entity might face because we've created this legal fiction. That might be true, Your Honor, but there are exceptions that have been laid out for receivers in this context. So, I believe the most prominent one is the inapplicability of an imperi delicta defense against the receiver. Essentially, if a receivership entity were to bring any other kind of cause of action against a third party, the third party could typically argue that their  But once the receiver is appointed, it changes that rule, allowing the receiver to, in the shoes of the receivership entity, claim that the receivership entity was harmed by these acts that were alleged. Turning to my second point, compelling the receiver to arbitrate in this context, meaning the Ponzi scheme context, essentially gives effect to the instruments that perpetrate the fraud and a tantamount to advancing the fraud after the fact. I want to note that fraudulent transfer claims, as an initial matter, is one of the powerful tools that fiduciaries like trustees and receivers have to augment the estate. And specifically, in the context of a Ponzi scheme, the Dinell Court stated that courts have routinely applied the uniform fraudulent transfer statutes to allow receivers or trustees in bankruptcy to recover monies lost by Ponzi scheme investors. With this power, trustees and receivers are able to claw back money that otherwise should not have left the hands of the receivership entity or debtor. And typically, what you'd find in connection with a single bankruptcy case or a receivership is that the receiver or the trustee would bring dozens of these actions. And it's one of the ways that truly brings money back into the estate. And from there, fraudulent transfer claims are not contract-based claims, meaning that the contract do not control, and it doesn't matter what the contract states. And Dinell specifically states that the purpose of these uniform fraudulent transfer statutes is, quote, not to identify binding agreements, but to identify transfers made with no rational purpose except to avoid creditors. And that's at 777. This makes sense as agreements can be used to perpetrate the fraud, fraudulent transfer. Some common examples outside the context of a Ponzi scheme include leverage buyouts, as well as marital settlement agreements between a debtor spouse and their non-debtor spouse. Spouse agrees to transfer property to them pursuant allegedly to settle debts, but really it's to avoid his creditors. Moreover, in the Ponzi scheme context, the receiver basically has been appointed to clean up the mess that's been created from the Ponzi scheme. And in that way, if the contract used to perpetrate that fraud is now being used against the receiver to say, hey, you have to arbitrate your claims because this agreement that the receivership entity that was used to perpetrate the fraud signed seems sort of antithetical to the purpose of your receiver administering a receivership estate. And lastly, I'd like to just point out that this court has taken bold action with respect to Ponzi scheme related fraudulent transfer claims. First, the courts adopted the Ponzi scheme presumption, which establishes that the mere existence of a Ponzi scheme is sufficient as a matter of law to satisfy the actual fraudulent intent element without the need to engage in any sort of badges of fraud analysis. And second, the courts also adopted the netting rule, which establishes how you calculate damages as well as the initial liability on a fraudulent transfer claim for a investor who has invested in a Ponzi scheme. In addition, the last thing I'd like to point out is that taking action that this court would also be consistent with the California law that governs fraudulent transfers. Specifically, I'd like to point you to sections 3439.01C and 3439.07D. In these provisions, they define the creditor, the creditor being the one able to pursue a fraudulent transfer claim to include an assignee in connection with an assignment for the benefit of creditors, or an ABC. An ABC is effectively a state law-based liquidation mechanism similar to a Chapter 7 case. And so in that sort of situation, all the assets of the debtor are assigned to the assignee. The assignee acts as a fiduciary for the assignment of state and functions like a trustee and has the powers to avoid transfers as a creditor. Thank you, lawyers. Thank you for your argument, counsel. May it please the court, a great deal of what Mr. Pham just said is brand new. It's new, never raised in the district court, never raised here. Before I talk about that, I want to get back to Judge Tashima's final question to me about who's a party and who isn't. The receiver's complaint is the operative document. It says we're parties. We're not arguing, we're not. He has alleged we are. It is on that basis that arbitration should be compelled. Donnell does not say that Essex is a creditor. This notion of separation between Mr. Ianelli and the plead, and we quoted it in our reply brief, is that Essex made the transfers. That's the entity. That is the entity in whose shoes the receiver steps. What Donnell and Scholes say about the shifting roles is simply that the receiver cannot shift into the role of creditor. We quoted that language too. They make it quite clear. He cannot bring creditor's claims. And all that leaves for him, if he can't claim on behalf of creditors, is to claim on behalf of the receivership entity. There is no fourth party. And so if he claims only on behalf of the receivership entity, he is bound by its commitments under the arbitration agreement and under the strong federal policy favoring arbitration. The argument that the contract perpetrates the fraud is also new. It was not pled below. It was not argued below. But I would point out, we did end up discussing it in our reply brief because they raised it for the first time in their brief, particularly by reference to Judge Higginbotham's concurrence in that one case. And I would point out in the PrimaPaint case that we cited that to make that claim, which they've never made, to make that claim, you have to show not only, or at least allege, not only that the contract was fraudulent, but that the arbitration provision itself was fraudulent. It's not enough to say there's a fraud and arbitration is part of it. You have to say part of the fraud was to get arbitration agreements. There's not a, I'm not even sure Mr. Pham has argued that today, but they certainly never argued it on appeal or below. He is again blurring the line between fiduciaries. As they did talking about court-appointed fiduciaries. That's, maybe that's a category for discussion in law school. But there are at least two kinds of them, and one of them, as we said when we began, has a statute, 541B, that allows it to, him or her, the bankruptcy trustee, to proceed on behalf of creditors. That receivers don't have that. They can only act on behalf of the entity. I recognize, as Judge Forrest's questions indicated, that it's a little hard to figure out what Donnell and Scholes actually did there when they sort of said, you know, okay, the entity is damaged by wrongful transfers, by fraudulent transfers. But that's what they said. But in the same breath, they said, but receivers can't be creditors. And they did that to refer to something Mr. Pham also talked about. Because, you know, you can't, a receiver is not subject to an in pari delicto defense. But it is still, all of that is the reason they created that. But in doing so, in creating what they did in Scholes and adopting it in Donnell, they did not change, and in fact, re-articulated the rule that receivers can't bring creditor claims. I see my time is about to expire. I appreciate it. We would ask that the decision be reversed and the case be sent to arbitration. Where some of these arguments can probably be made. All right. McCloskey versus Winkler is submitted. Thank you, counsel, for your helpful arguments.
judges: TASHIMA, FORREST, Cardone